# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HAROLD T. COTTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-46-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Harold T. Cotton requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of hisr past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-three years old at the time of the administrative hearing (Tr. 39). He completed the sixth grade, and has worked as a kitchen helper, laborer in a dairy, and janitor (Tr. 26, 349). The claimant alleges that he has been unable to work since March 21, 2012, due to depression, anxiety, heart disease, colon problems, learning disability, and illiteracy (Tr. 348).

## Procedural History

On September 14, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and on September 27, 2012, he applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ John W. Belcher conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 22, 2015 (Tr. 11-28). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work, *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk six hours in an eight-hour workday, and sit for six hours in an eight-hour workday, but only

occasionally climb, balance, bend, stoop, kneel, crouch, or crawl. Additionally, he determined that the claimant could perform simple and routine tasks, and have superficial contact with co-workers, supervisors, and the public, where "superficial" was defined as "contact similar to that which a grocery clerk might have with those groups" (Tr. 19). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *e. g.*, production inspector, press machine operator, and bench assembler (Tr. 25-28).

**Review**

The claimant contends that the ALJ erred by: (i) failing to properly assess his mental impairments based on the state reviewing physician opinion in the record, and (ii) improperly considering and rejecting the opinion of a consultative examiner. The Court agrees with the claimant's first contention, and the decision of the Commissioner must therefore be reversed.

The ALJ found that the claimant had the severe impairments of ischemic heart disease, right knee osteophytes, hypertension, obesity, depression, anxiety and PTSD, a learning disability, and borderline intellectual functioning (Tr. 14). The relevant medical records as to the claimant's mental impairments are as follows.

On November 14, 2012, Dr. Denise LaGrand conducted a mental status/diagnostic examination, and estimated that the claimant had borderline intellectual functioning, which was consistent with his education and job history (Tr. 521-524). She assessed him with

major depressive disorder, polysubstance abuse/dependence, and tobacco use disorder (Tr. 524).

On December 11, 2012, state reviewing physician Laura Lochner, Ph.D., completed a review of the claimant's evidence to that point, and found that the claimant's mental impairments consisted of affective disorders and substance addiction disorders, and that he was moderately impaired in the three functional categories of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace (Tr. 94). Dr. Lochner also completed a Mental RFC Assessment and found in the area referred to as "Section I" that the claimant was markedly limited in the typical three categories of ability to understand and remember detailed instructions, to carry out detailed instructions, and to interact appropriately with the general public, and that he was moderately limited in the ability to maintain attention and concentration for extended periods (Tr. 97-98). In the written comments section ("Section III"), Dr. Lochner wrote that the claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, and could adapt to a work situation, but could not relate to the general public (Tr. 98).

On October 20, 2014, nearly two years later, Dr. Brian Snider conducted a mental status examination of the claimant (Tr. 541-545). Among other things, the claimant appeared to have a limited fund of knowledge and impaired judgment, and Dr. Snider estimated the claimant's intellectual ability in the extremely low to borderline range (Tr. 543). He assessed the claimant with major depressive disorder, PTSD, generalized anxiety disorder, and alcohol use disorder in sustained remission (Tr. 545). Additionally, Dr.

Snider completed a mental RFC assessment, in which he indicated that the claimant had extreme limitations in the ability to interact appropriately with supervisors and co-workers; marked limitations in the ability to interact appropriately with the public, understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions; and had moderate limitations in the ability to respond appropriately to usual work situations and to changes in a routine work setting (Tr. 538-539). He cited the claimant's intellectual deficit and poor judgment, as well as irritability, history of conflict on the job, and anxiety around others, in support of his assessment (Tr. 538-539).

At the administrative hearing, the ALJ elicited testimony from a VE to determine if there were jobs a hypothetical person could perform with the following limitations:

> . . . limited to lifting no more than 20 pounds occasionally, 10 pounds frequently, with pushing and pulling consistent with lifting and carrying limitations. He could stand or walk for six hours in an eight hour day, sit for six to eight hours in an eight hour day. He could climb, balance, bend, or stoop, kneel, crouch, or crawl on an occasional basis. He could simple tasks, simple and routine tasks. He should have superficial contact with coworkers, supervisors, and the public, and by superficial I mean contact similar to that that a grocery clerk might have with others, groups like that – coworkers, supervisors, and the public.

(Tr. 62). The VE identified that the claimant could perform the jobs of production inspector, DICOT § 712.684-050; light press machine operator, DICOT § 690.685-326; and bench assembler, DICOT § 780.684-062 (Tr. 63).

In his written opinion, the ALJ summarized the claimant's hearing testimony and the medical evidence in the record. Based on the evidence in the record regarding the claimant's cognitive and intellectual functioning, the ALJ found that the claimant's ability

to perform more than simple tasks was limited (Tr. 22). In the next sentence, however, he stated that the claimant's learning disability and borderline intellectual functioning were not as severe as alleged because he had a good understanding of most questions, had an adequate fund of knowledge, and exhibited the ability to read and follow simple instructions (Tr. 22). As to his depression, anxiety, and PTSD, the ALJ found that they limited the claimant's ability to perform complex tasks and to get along with others, including co-workers and supervisors (Tr. 22). He then stated in the immediately-following sentence that these impairments were not consistently severe because: (i) he had no problems with personal care, (ii) he prepared simple meals on a daily basis, (iii) he had no difficulty concentrating during a Social Security interview, (iv) he exhibited the ability to perform simple math, and (v) at times had denied anxiety and depression (Tr. 22-23). As to Dr. Snider, he afforded the opinion "some weight" because Dr. Snider only examined the claimant once, and his assessment regarding interacting with others was inconsistent with the evidence, but his assessment with regard to instructions and decisions was consistent with the evidence (Tr. 23-23). The ALJ likewise afforded "some weight" to Dr. Lochner's reviewing opinion, finding the opinion generally consistent with the record regarding impaired concentration and memory, but that the inability to relate to the general public was inconsistent with the record (Tr. 24). The ALJ determined the claimant's RFC as set forth above, then adopted the VE's testimony that he could perform the jobs of production inspector, light press machine operator, and bench assembler (Tr. 19, 27).

The claimant argues that the ALJ failed to properly assess Dr. Lochner's opinion, despite giving it some weight. Specifically, he contends that the ALJ failed to account for

Dr. Lochner's Section I finding that the claimant was markedly limited in his ability to understand, remember, and carry out detailed instructions, which means that he could not usefully perform or sustain such activities, because her Section III RFC failed to account for this.

Social Security Ruling 96–6p instructs that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4 (July 2, 1996). These opinions are to be treated as medical opinions from non-examining sources. *Id.* at *2. Although the ALJ is not bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the opinion in his decision. *Id. See also Valdez v. Barnhart,* 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it.") [unpublished opinion], *citing* 20 C.F.R. § 416.927(f)(2)(ii). Here, although the ALJ found the claimant could perform simple and routine tasks, and only have superficial contact with co-workers, supervisors, and the public, he did not account for Dr. Lochner's findings related to the claimant's ability to perform detailed work (Tr. 24-25). *See, e.g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

The government asserts that the findings of marked limitations contained in the first section of the mental RFC assessment are merely an "aid" and not Dr. Lochner's ultimate opinion. *See* Social Security Administration Program Operations Manual System (POMS) DI 24510.060, *Mental Residual Functional Capacity Assessment* ("Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment. . . . Section III – Functional Capacity Assessment is for recording the mental RFC determination [and is] the actual mental RFC assessment [as] recorded."). The Commissioner thus argues that the findings of marked limitations are not necessary for inclusion in the ultimate RFC assessment because this position has been adopted in at least one unpublished opinion by the Tenth Circuit. *See Lee v. Colvin*, 631 Fed. Appx. 538, 541 (10th Cir. 2015). *See also Nelson v. Colvin*, 655 Fed. Appx. 626, 628-629 (10th Cir. 2016) (finding the Section III narrative adequately captured the limitations found in Section I, and the ALJ's limitation of the claimant to unskilled work accounted for the marked limitations). However, the Tenth Circuit has found that "this does not mean that an ALJ can turn a blind eye to moderate Section I limitations. . . . [I]f a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or *if it contradicts limitations marked in Section I*, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver v. Colvin,* 600 Fed. Appx. 616, 619 (10th Cir. 2015). *See also Silva v. Colvin*, 203 F. Supp. 3d 1153, 1163-1164 (D. N.M. 2016 ("[T]he Court has surveyed the cases from our circuit that expressly address the distinction between Section I and Section III. If read in a

vacuum, *Smith*[ *v. Colvin*, 821 F.3d 1264 (10th Cir. 2016)] and *Sullivan*[ *v. Colvin*, 519 Fed. Appx. 985 (10th Cir. 2013)] could be interpreted in the Commissioner's favor, but the others could not. . . . While some of these cases suggest that an ALJ may rely exclusively on the Section III findings, they do so with an important caveat: the Section III findings must adequately account for the Section I findings."). And here, the limitations were largely marked, not moderate, which bolsters the claimant's argument even further.

The Commissioner next contends that the jobs identified at step five nonetheless account for any inability to understand, remember, and carry out detailed instructions. The Court, however, finds that the jobs identified *do not* account for those limitations as to the reasoning level requirements. The jobs of production inspector, DICOT § 712.684-050; light press machine operator, DICOT § 690.685-326; and bench assembler, DICOT § 780.684-062, all have a reasoning level of 2, which requires a worker to "[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions" [emphasis added]. The reasoning level best identifies the level of simplicity (or, conversely, complexity) associated with a job. *See Cooper v. Barnhart,* 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004) ("The reasoning level, as identified by Plaintiff, appears more similar to whether or not a claimant has a limitation to performing only simple tasks.") [citations omitted]. If a claimant is limited to simple, repetitive tasks, it stands to reason that a job requiring the ability to understand and carry out detailed but uninvolved written or oral instructions would create a conflict. *See McKinnon v. Astrue,* 2010 WL 3190621, at *5 (D. Colo. Aug. 12, 2010); *Allen v. Barnhart,* 2003 WL 22159050, at *10 (N.D. Cal. Aug. 28, 2003) (examining the requirements of the GED reasoning level

of 2 and finding that "[t]he need to follow 'detailed' and 'involved' instructions exceeds the ALJ's limitation of plaintiff to 'simple, routine tasks.' Such instructions are not simple and uncomplicated, or limited to one or two steps."). "[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel,* 196 F.3d 1084, 1091 (10th Cir. 1999). *See also Krueger v. Astrue,* 337 Fed. Appx. 758, 760–762 (10th Cir. 2009) (reversing and remanding in part because the ALJ failed to resolve a conflict between VE's testimony and DOT job descriptions); *Poppa v. Astrue,* 569 F.3d 1167, 1173 (10th Cir. 2009) (noting that SSR 00–4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [DOT]"); *Hackett v. Barnhart,* 395 F.3d 1168, 1175 (10th Cir. 2005) (applying *Haddock* to nonexertional limitations). Furthermore, "[t]he [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. The ALJ did neither in this case.

The Commissioner nevertheless argues that the law is unsettled and does not require reversal in this case because GED reasoning levels are related to the claimant's education level and background. *Anderson v. Colvin*, 514 Fed. Appx. 756, 764 (10th Cir. 2013) ("GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job, broken into the divisions of Reasoning Development, Mathematical Development and

Language Development."); *Mounts v. Astrue*, 479 Fed. Appx. 860, 868 (10th Cir. 2012) ("Job descriptions in the [DOT] contain several elements required to perform a specific job, including a claimant's GED, which is the level of formal and informal education required to perform a specific job."). As such, the Commissioner points to a number of District Court cases described as the "better-reasoned line of authority" because they refer to the DOT definition of these reasoning levels. *See, inter alia*, *Pacheco v. Colvin*, 83 F. Supp. 3d 1157, 1167 (D. Colo. 2015); *Owen v. Colvin*, 2015 WL 1490947, at *5 (D. Utah March 30, 2015). However, the Court finds that these cases, on their facts, are distinguishable from the present case in that they either determined harmless error because other jobs had been identified (which is *not* the absence of error), or referred to illiteracy or a different level of reasoning than the limitation to simple and routine tasks that is present in this case. Furthermore, the Court notes the Commissioner's reference to *Rom v. Colvin*, 2016 WL 3528059, at *3 (N.D. Okla. June 23, 2016), in which the United States Magistrate Judge found that "[t]he vocational expert, not the court, has the expertise to interpret the information in the DOT," *citing Segovia v. Astrue*, 226 Fed. Appx. 801, 804 (10th Cir. 2007). But here, the ALJ failed to ask the VE to reconcile this conflict or clarify how the DOT could be applied to the claimant's mental limitations, which is in violation of this Circuit's holding in *Haddock. See also Krueger*, 337 Fed. Appx. at 760–762 (reversing and remanding in part because ALJ failed to resolve conflict between VE's testimony and DOT job descriptions); *Hackett*, 395 F.3d at 1175 (applying *Haddock* to nonexertional limitations); *Poppa*, 569 F.3d at 1173 (noting that SSR 00–4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the

description of that job in the [DOT]"). In the Tenth Circuit, this apparent inconsistency is reversible error. *See Hackett*, 395 F.3d at 1176 (finding a limitation to simple and routine work tasks "inconsistent with the demands of level-three reasoning," and reversing "to allow the ALJ to address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE."). *See also Ward v Colvin*, 2015 WL 9438272, at *3 (W.D. Okla. Sept. 17, 2015) (slip op.) ("The Court declines to find, as urged by the Commissioner, that to the extent GED reasoning levels are not specific mental or skill requirements, they can be disregarded when addressing the mental demands of jobs listed in the DOT.").

Although the unresolved conflict as to the claimant's mental limitations would have been harmless error if the ALJ had identified in his opinion other jobs that did not pose a conflict, it is not harmless here because the three jobs identified had reasoning levels of 2. *See Stokes v. Astrue,* 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding that any error on whether claimant could perform jobs was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country."). For the reasons set forth above, the Court concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for proper analysis of the medical opinions of record. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 24th day of September, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**